**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOANNA SANCHEZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 16-cv-6144 |
| v. | |
| JOHN LEE JACKSON and UNIVERSAL FIDELITY, LP, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joanna Sanchez ("Plaintiff") alleges that Defendants John Lee Jackson ("Jackson") and Universal Fidelity, LP ("Universal") (collectively, "Defendants") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by failing to provide a proper debt validation notice to Plaintiff. First Am. Comp. [18]. On September 15, 2016, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss [21]. For the reasons explained below, Defendants' motion is denied.

## I.    Background

Plaintiff sets forth the following relevant facts, which the Court accepts as true for the purposes of Defendants' Motion to Dismiss. Sometime before the spring of 2016, Plaintiff, an Illinois resident, incurred a consumer debt from a Montgomery Ward credit account. First Am. Compl. [18] ¶ 10. Plaintiff did not pay the debt and it went into default. *Id.* ¶ 11.

Universal is a debt collection agency with its principal place of business in Houston, Texas.[1]  *Id.* ¶¶ 8-9.  On or about March 22, 2016, Universal sent a notice to Plaintiff regarding her outstanding debt.[2]

In addition to its own collection efforts, Universal also retained Jackson, an independent Texas attorney, to assist in the collection of outstanding debts.  First Am. Compl. [18] Ex. B.  On or about May 9, 2016, Jackson sent a one-page, two-sided collection letter to Plaintiff.  *Id.*  The letter constituted Jackson's initial communication with Plaintiff.  First Am. Compl. [18] ¶ 16.  The letterhead provided Jackson's name and address and identified Jackson as an "ATTORNEY ON RETAINER FOR UNIVERSAL FIDELITY LP."  First Am. Compl. [18] Ex. B.  In the body of the letter, Jackson stated the following:

> I am an Attorney and **I am on retainer** with Universal Fidelity LP.  **I am not an employee** of Universal Fidelity LP and only advise them of corporate law and therefore advise them on legal matters. This letter is being sent to you because **I am involved in the collection strategy of the outstanding accounts owed to them**. You will not be sued by Universal Fidelity LP or by me, this is just a collection letter to request you pay this account owed to Montgomery Ward.
>
> Their records indicate that you are indebted to them for the amount of $182.94.  Universal Fidelity LP offers

<hr/>

[1]  Although Plaintiff's First Amended Complaint [18] is unclear, the Court presumes that Montgomery Ward either assigned Plaintiff's debt to Universal or retained Universal for assistance in the debt collection process.

[2]  This fact does not appear in Plaintiff's First Amended Complaint [18].  Instead, Plaintiff raises it for the first time in her response to Defendants' motion, in conjunction with a request to further amend her complaint to include the March 22, 2016 letter as an exhibit.  *See* Pl.'s Resp. Defs.' Mot. Dismiss [24] 7 n. 1.  Because this fact provides factual clarity to the present controversy, the Court grants Plaintiff leave to amend her operative complaint for the limited purpose of incorporating the March 22, 2016 notice.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

> convenient payment options to help you satisfy this claim. I have received the files from Universal Fidelity LP Electronically [sic] and conducted a cursory review and approved the release of these letters. Do not consider this letter a notification of intent to sue: since I do not have the legal authority to sue and Universal Fidelity LP will not sue you, this is a request for payment only: I have not, nor will I, review the detail of your account status.

*Id.* (emphasis added) (other emphasis removed). The bottom of Jackson's letter stated, "**This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.**" *Id.* (emphasis in original). The bottom of the letter also provided a payment slip addressed to Universal. *Id.*

John Lee Jackson
ATTORNEY ON RETAINER
FOR UNIVERSAL FIDELITY LP
16325 Westheimer Rd Houston, TX. 77082

**RETURN SERVICE REQUESTED**

05/09/2016

11

OFFICE HOURS:

| | |
|---|---|
| Mon - Tue | 9:00am - 8:00pm EST / 8:00am - 7:00pm CST |
| Wed - Thurs | 9:00am - 6:30pm EST / 8:00am - 5:30pm CST |
| Fri | 9:00am - 6:00pm EST / 8:00am - 5:00pm CST |
| Sat | 9:00am -1:00pm EST / 8:00am - 12:00pm CST |

SE HABLA ESPANOL

JOANNA SANCHEZ

**ACCOUNT SUMMARY**

EDP Number:
Date: 05/09/2016
RE: Montgomery Ward
Account No.:
Balance Due: **$182.94**

Dear JOANNA SANCHEZ,

I am an Attorney and I am on retainer with Universal Fidelity LP. I am not an employee of Universal Fidelity LP and only advise them of corporate law and therefore advise them on legal matters. This letter is being sent to you because I am involved in the collection strategy of the outstanding accounts owed to them. You will not be sued by Universal Fidelity LP or by me, this is just a collection letter to request you pay this account owed to **Montgomery Ward**.

Their records indicate that you are indebted to them for the amount of **$182.94**. Universal Fidelity LP offers convenient payment options to help you satisfy this claim. I have received the files from Universal Fidelity LP Electronically and conducted a cursory review and approved the release of these letters.

Do not consider this letter a notification of intent to sue; since I do not have the legal authority to sue and Universal Fidelity LP will not sue you, this is a request for payment only: I have not, nor will I, review the detail of your account status.

Sincerely,

**PAYMENT OPTIONS**

Scan this code with your smartphone to pay your bill online.

Call Us: 281-647-4152

Mail your payment, made payable to UFLP, using the attached payment coupon and provided return envelope.

Pay Securely Online at:
**www.payuflp.com**

NOTE: Calls to or from Universal Fidelity LP will be monitored and recorded for quality assurance

ACA     BBB

Calls to or from UFLP may be monitored or recorded for quality assurance. See reverse side for important consumer information.

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collector.

CHECKS MAY BE ELECTRONICALLY DEPOSITED     DETACH PAYMENT COUPON AND MAIL IN RETURN ENVELOPE PROVIDED TO ENSURE PROPER CREDIT TO YOUR ACCOUNT
NOTICE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION AND CHANGE OF ADDRESS

| ACCOUNT SUMMARY | |
|---|---|
| STATEMENT DATE: | 05/09/2016 |
| DEBTOR NAME: | JOANNA SANCHEZ |
| RE: | Montgomery Ward |
| EDP NUMBER | |
| BALANCE DUE: | **$182.94** |
| DATE OF PAYMENT: | ___/___/___ |
| AMOUNT ENCLOSED: | $_____ |
| CELL PHONE: | (____)____-_____ |
| HOME PHONE: | (____)____-_____ |

> Billing Phone Number:_____

> E-Mail Address:_____

IF PAYING BY CREDIT CARD, FILL OUT BELOW

EP CODE     VISA ☐     ☐     DISCOVER ☐

CCR     CCVR (on back of card)     EXP. DATE

SIGNATURE

Name as it appears on card     ACCOUNT #

UNIVERSAL FIDELITY LP
P. O. Box 941911
Houston, TX 77094-8911

A. Mail Payment To

UniversalFidelity.wrld COJM 642834 00002511
Page 1 of 2

**Figure 1.  Front of May 9, 2016 Letter from Jackson (Redacted)**

4

The reverse side of Jackson's letter stated, in relevant part (and in all caps), the following:

> UNLESS YOU NOTIFY <u>UNIVERSAL FIDELITY LP</u>, WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, <u>UNIVERSAL FIDELITY LP</u> WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY <u>UNIVERSAL FIDELITY LP</u> IN WRITING WITHIN 30 DAYS FROM RECEIVING YOUR INITIAL NOTICE, <u>UNIVERSAL FIDELITY LP</u> WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT [SIC] AND MAIL YOU A COPY OF SUCH JUDGEMENT [SIC] OR VERIFICATION. IF YOU MAKE A REQUEST TO <u>UNIVERSAL FIDELITY LP</u> IN WRITING WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE, <u>UNIVERSAL FIDELITY LP</u> WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

*Id.* (emphasis added). Plaintiff did not receive any further communication from Jackson aside from the May 9, 2016 correspondence. First Am. Compl. [18] ¶ 23.

On June 16, 2016, Plaintiff filed a class action suit in this Court. Compl. [1]. On August 25, 2016, Plaintiff filed her First Amended Complaint [18]. In her sole count, Plaintiff alleges that Defendants violated § 1692g(a) of the FDCPA. Generally, § 1692g(a) provides that "in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first, a debt collector must provide specific information to the consumer." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320-31 (7th Cir. 2016). Specifically, § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> > (1) the amount of the debt;
> >
> > (2) the name of the creditor to whom the debt is owed;
> >
> > (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> >
> > (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> >
> > (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Plaintiff alleges that Jackson (and vicariously, Universal) violated this provision by failing to provide an adequate debt validation notice in conjunction with his May 9, 2016 letter. First Am. Compl. [18] ¶ 32. Although, as described above, Jackson's letter included a validation notice referencing *Universal*, Plaintiff maintains that Jackson cannot rely on another debt collector and instead must include his *own* disclosure referencing himself. *Id.* ¶¶ 20-24. In other words, Plaintiff asserts that § 1692g(a) required Jackson to notify Plaintiff of her right to contact *Jackson* directly to dispute or verify her debt. *Id.* Defendants' disagreement with this statutory interpretation forms the basis of their Motion to Dismiss. Defs.' Mot. Dismiss [21].

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, the claim must first comply with Rule 8 of the Federal Rules of Civil Procedure by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520

F.3d 797, 803 (7th Cir. 2008).  In evaluating the complaint, the Court accepts all

well-pleaded allegations as true and draws all reasonable inferences in favor of

Plaintiff.  *Iqbal*, 556 U.S. at 678.

## III. Analysis

The Court begins with the principle that "the FDCPA regulates only the

conduct of '*debt collectors*.'"  *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th

Cir. 2009) (emphasis added); *see also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d

534, 536 (7th Cir. 2003) ("Creditors, 'who generally are restrained by the desire to

protect their good will when collecting past due accounts,' are not covered by the

Act.  Instead, the Act is aimed at debt collectors, who may have 'no future contact

with the consumer and often are unconcerned with the consumer's opinion of

them.'") (quoting S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695,

1696).  Therefore, Plaintiff's complaint must be dismissed "if it fails to raise a

plausible inference that defendants were 'debt collectors' within the meaning of the

FDCPA."  *Stone v. Washington Mut. Bank*, No. 10-cv-6410, 2011 WL 3678838, at *8

(N.D. Ill. Aug. 19, 2011).  With certain exceptions not applicable here, the FDCPA

defines "debt collector" as

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to be owed or
> due another.

15 U.S.C. § 1692a(6).

Here, Defendants concede that Universal falls under this definition, but contend that Jackson, Universal's attorney agent, does not. The first question, therefore, is whether, as a matter of law, attorneys may qualify as "debt collectors." In *Heintz v. Jenkins*, the Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity." 514 U.S. 291, 299 (1995). In doing so, the Court noted that the original version of the statute enacted in 1977 contained an express exemption for lawyers "'collecting a debt as an attorney on behalf of and in the name of a client.'" *Id*. at 294 (quoting Pub. L. 95-109, § 803(6)(F), Sept. 20, 1977, 91 Stat. 874, 875). The Court further noted, however, that in 1986, Congress repealed this exemption in its entirety. *Id*. (citing Pub. L. 99-361, 100 Stat. 768). From this, the Court inferred, "Congress intended that lawyers be subject to the Act whenever they meet the general 'debt collector' definition." *Id*. at 294-95.

Here, drawing all reasonable inferences in favor of Plaintiff, the pleadings sufficiently allege that Jackson "regularly engages" in consumer debt collection. Plaintiff alleges that, besides Jackson's May 9, 2016 letter to Plaintiff, Jackson sent similar letters to "multiple consumers in Illinois." First Am. Compl. [18] ¶ 34. Jackson's letter also acknowledged his role in the collection of "outstanding accounts"—plural—owed to Universal; that he received and reviewed multiple debt files; and that he approved the release of numerous collection letters. *Id*. Ex. B. Most importantly, the bottom of Jackson's letter included a bolded disclaimer that "**This communication is from a debt collector.**" *Id*. (emphasis in original).

Indeed, despite their objection to classifying Jackson as a "debt collector," Defendants' pleadings are silent as to whether Jackson "regularly engages" in debt-collection activity. These facts, combined with the Court's "judicial experience and common sense," are sufficient to meet the FDCPA's general "debt collector" definition at this stage. *See Iqbal*, 556 U.S. at 679.

Defendants counter that, in this instance, Jackson merely acted as an agent "on behalf of" Universal, Mem. Supp. Defs.' Mot. Dismiss [22] 4, an assertion confirmed by Jackson's letter. *See* First Am. Compl. [18] Ex. B (stating that Jackson was "not an employee" of Universal but rather "on retainer" to help implement "the collection strategy of the outstanding accounts owed to them"). The next issue, therefore, is whether debt-collector attorneys are subject to the FDCPA even when serving as agents of debt-collector clients. The Court answers this question in the affirmative. *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1071 n. 1 (9th Cir. 2016) (holding that FDCPA applies to attorneys who regularly engage in debt-collection activity "even if the attorney is acting on behalf of a debt-collector client.") (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1513 (9th Cir. 1994)).

This finding is consistent with Congress' repeal of the FDCPA's exemption for lawyers "collecting a debt as an attorney on behalf of and in the name of a client," Pub. L. 95-109, § 803(6)(F), Sept. 20, 1977, 91 Stat. 874, 875, and has been indirectly endorsed by the Seventh Circuit. In *Marquez v. Weinstein, Pinson & Riley, P.S.*, several plaintiffs alleged FDCPA violations against multiple co-

defendants: an attorney, his law firm, and its debt-collection agency client. No. 14-cv-00739, 2015 WL 4637952, at *1 (N.D. Ill. Aug. 4, 2015). The plaintiffs alleged that, in an attempt to collect outstanding student loan debts, the attorney and law firm filed misleading and deceptive civil complaints against the plaintiffs "on behalf of" the debt-collection agency. *Id.*; *see* 15 U.S.C. § 1692e (prohibiting a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt"). The district court disagreed that the filings at issue violated the FDCPA and dismissed the complaint. *Id.* at 5. The Seventh Circuit reversed and found the complaints "misleading and deceptive as a matter of law," despite the fact that, as here, the attorney and law firm merely acted as agents of their debt collector client. 836 F.3d 808, 815 (7th Cir. 2016).

Having concluded that Jackson qualifies as an independent "debt collector" subject to FDCPA regulation—even in light of his representation of Universal—the Court turns to whether his May 9, 2016 letter constitutes an "initial communication." *See* 15 U.S.C. § 1692g(a) (only requiring debt validation notice within five days of "initial communication" with a consumer). This issue is clouded by Plaintiff's acknowledgment that, more than thirty days before Jackson's letter, Universal sent its *own* collection notice to Plaintiff. Courts in this district are split as to whether § 1692g applies only to the *first* debt collector to make contact with a debtor, or rather to *each* successive debt collector in line. The trend, however, has been towards the latter. *Compare Thomas v. Law Firm of Simpson & Cybak,* No. 00-cv-8211, 2001 WL 1516746, at *3-4 (N.D. Ill. Nov. 28, 2001), *rev'd on other*

*grounds,* 392 F.3d 914 (7th Cir. 2004) (finding that because initial communication with the plaintiff was made by the debt collection agency and not its retained lawyer, lawyer's failure to provide debt notification did not violate FDCPA); *Weinstein v. Fink,* No. 99-cv-7222, 2001 WL 185194, at *7 (N.D. Ill. Feb. 26, 2001) (same) *with Janetos v. Fulton Friedman & Gullace, LLP*, No. 12-cv-1473, 2013 WL 791325, at *6 (N.D. Ill. Mar. 4, 2013) ("§ 1692g applies to the initial communication in connection with the collection of a debt by each successive debt collector"); *Francis v. Snyder,* 389 F.Supp.2d 1034, 1040 n. 2 (N.D. Ill. 2005) (same).

In *Janetos*, as in the present case, the plaintiffs filed a class action lawsuit against a debt collection agency and the law firm that managed the agency's collection litigation.  2013 WL 791325, at *1.  The plaintiffs, like Plaintiff here, alleged that in an attempt to collect debts on behalf of the collection agency, the law firm mailed individual collection letters that violated the FDCPA's debt notice provision.  *Id*.  According to the *Janetos* plaintiffs, the law firm's collection letters failed to clearly identify which entity—the law firm or the collection agency— actually owned the purported debt.  *Id*. at *4; *see* 15 U.S.C. § 1692g(a)(2) (requiring debt collector to provide "the name of the creditor to whom the debt is owed").  Moreover, one collection letter pertained to a debt previously extinguished in state court.  *Id.*  The defendants asserted that, because the collection agency initiated its *own* collection efforts several years before the law firm, § 1692g did not apply to the firm's letters.  *Id.*  That is, the defendants claimed that the firm's letters constituted

the initial communication from the *firm*, not the initial communication with respect to the purported debts. *Id*.

The district court acknowledged that "§ 1692g is not clear on its face whether 'the initial communication' requirements apply once to each debt or once to each debt collector who attempts to collect a debt." *Id*. at *5. Nevertheless, given "the FDCPA's purpose of curbing abusive debt collection practices," the court declined "to read a loophole into § 1692g that would exempt successive debt collectors from sending a validation notice." *Id*. The court reasoned that § 1692g "is not superfluous when a new debt collector enters the picture" because it "helps to ensure that any mistakes"—such as the attempted collection of a previously-extinguished debt—"are promptly resolved." *Id*. The court further found that requiring each debt collector to comply with § 1692g was "not a heavy burden" and consistent with the Federal Trade Commission's interpretation of the statute. *Id*.; *see* Federal Trade Commission Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50100 (December 13, 1998) (explaining that under § 1692g, an "attorney debt collector must provide the required validation notice, even if a previous debt collector (or the creditor) has given such notice").

Although the district court found § 1692g applicable to initial communications made by successive debt collectors, it held in a subsequent ruling that, on grounds not pertinent here, the plaintiffs failed to meet their burden of proof and granted summary judgment to the defendants. No. 12-cv-1473, 2015 WL

1744118, at *9 (N.D. Ill. Apr. 13, 2015). The Seventh Circuit reversed and held that the plaintiffs were "entitled to a finding of liability for violations of § 1692g(a)(2)." 825 F.3d 317, 326 (7th Cir. 2016). The Seventh Circuit did not specifically address the district court's predicate ruling that § 1692g applies to each debt collector who attempts to collect a debt. But it defies logic that the court would grant relief for violations of § 1692g if it doubted the applicability of the provision to the communications at issue. Consequently, this Court adopts the interpretation of § 1692g found in the *Janetos* line of cases and finds that § 1692g applies to the initial communication made in connection with the collection of a debt by each successive debt collector. Applied here, this includes Jackson's May 9, 2016 letter to Plaintiff.

The Court however, cannot rest there, because this case presents the added wrinkle that Jackson's letter to Plaintiff *did* include *a* debt notice—Universal's. The letter informed Plaintiff to notify *Universal* in order to dispute or verify her debt, but said nothing of notifying Jackson. Defendants argue that this satisfies § 1692g(a). The Court therefore, must also determine whether an attorney debt collector acting as an agent on behalf of another debt collector must provide his *own* debt notice in addition to, or in lieu of, that of his client.

Once again, the Court answers this question in the affirmative. In doing so, the Court begins, as it must, with an examination of the FDCPA's statutory text. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in

a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text[.]") (internal quotations and citations omitted). If the "statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). When a statute is unambiguous, "our inquiry starts and stops with the text." *United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) (internal quotations omitted).

To repeat, § 1692g(a) provides that

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, **a debt collector** shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by **the debt collector**;
> (4) a statement that if the consumer notifies **the debt collector** in writing within the thirty-day period that the debt, or any portion thereof, is disputed, **the debt collector** will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, **the debt collector** will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added). The statutory text identifies the subject of the provision—"debt collector"—five times. In the first instance, the term is preceded by an indefinite article: "**a** debt collector shall . . . ." *See Louden Mach. Co. v. Strickler,* 195 F. 751, 757 (7th Cir. 1912) ("The word 'a' is primarily the indefinite article."). Indefinite articles point to "nonspecific objects, things, or persons that are not distinguished from the other members of a class." *The Chicago Manual of Style* § 5.70 (16th ed. 2010). Typically, they are used "to introduce new concepts into a discourse." *New Oxford American Dictionary* 882 (3d ed. 2010). In contrast, the remaining references to "debt collector" found in subparts (3) through (5) are preceded by the definite article: "**the** debt collector . . . ." *See Vulcan Const. Materials, L.P. v. Fed. Mine Safety & Health Review Comm'n*, 700 F.3d 297, 310 (7th Cir. 2012) (referring to "the" as the definite article). Definite articles point to a particular member of a class; their use implies "that the thing mentioned has already been mentioned." *New Oxford American Dictionary* 455 (3d ed. 2010).

By arguing that the debt validation notice in Jackson's May 9, 2016 letter satisfies § 1692g(a), Defendants necessarily posit that "**the** debt collector" referenced in subparts (3) through (5) means Universal, not Jackson:

| Statutory Text | Jackson's May 9, 2016 Letter |
|---|---|
| a debt collector shall . . . send the consumer a written notice containing—<br>. . . <br>(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion | UNLESS YOU NOTIFY **UNIVERSAL FIDELITY LP**, WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL |

| | |
|---|---|
| thereof, the debt will be assumed to be valid by **the debt collector**; | NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, **UNIVERSAL FIDELITY LP** WILL ASSUME THIS DEBT IS VALID. |
| (4) a statement that if the consumer notifies **the debt collector** in writing within the thirty-day period that the debt, or any portion thereof, is disputed, **the debt collector** will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and | IF YOU NOTIFY **UNIVERSAL FIDELITY LP** IN WRITING WITHIN 30 DAYS FROM RECEIVING YOUR INITIAL NOTICE, **UNIVERSAL FIDELITY LP** WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT [SIC] AND MAIL YOU A COPY OF SUCH JUDGEMENT [SIC] OR VERIFICATION. |
| (5) a statement that, upon the consumer's written request within the thirty-day period, **the debt collector** will provide the consumer with the name and address of the original creditor, if different from the current creditor. | IF YOU MAKE A REQUEST TO **UNIVERSAL FIDELITY LP** IN WRITING WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE, **UNIVERSAL FIDELITY LP** WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. |

A holistic reading of § 1692g(a), however, reveals that the term "**the** debt collector" found in subparts (3) through (5) refers *back* to "**a** debt collector" identified at the onset of the statutory provision. *See Oxford English Dictionary* Online, www.oed.com (last visited November 15, 2016) (stating that the word "the" "[m]ark[s] an object as before mentioned or already known, or contextually particularized (e.g. 'We keep *a* dog. We are all fond of *the* dog').") (first emphasis added); *Merriam-Webster Dictionary* Online, www.merriam-webster.com (last

visited November 15, 2016) (defining "the" as "a function word to indicate that a following noun . . . has been previously specified by context or by circumstance").

As discussed above, the Court interprets § 1692(g)(a)'s initial reference to "**a** debt collector" to apply to *each* successive debt collector (as that term is defined by the FDCPA) who makes an initial communication with a debtor, not merely the first debt collector in line. By extension, therefore, the subsequent reference to "**the** debt collector" in subparts (3) through (5) refers to the particular debt collector making the notification mandated in subsection (a). Applied to the present case, this means Jackson, not Universal.

This interpretation preserves the efficacy of the other sections of § 1692g. *See Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (Statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). For example, subsection (b) of § 1692g—which continues the use of the definite article—provides that

> [i]f the consumer notifies **the debt collector** in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector** shall cease collection of the debt, or any disputed portion thereof, until **the debt collector** obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by **the debt collector**.

15 U.S.C. § 1692g(b). The purpose of subsection (b) is to impose, upon a debtor's request, a cessation of collection activities "until the debt collector verifies the accuracy of the amount claimed." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992) (internal quotations omitted).

Because subsection (b) continues the use of the definite article, "**the** debt collector" referenced throughout that subsection is the same as "**the** debt collector" identified in subparts (3) through (5) of subsection (a). Again, under Defendants' reading, that "debt collector" is the collection agency client (here, Universal), *not* the attorney agent (Jackson). Taking this premise to its logical conclusion, however, creates a "substantial loophole" around § 1692g(b)'s verification requirement that "would undermine the very protections the statute provides." *Hernandez*, 829 F.3d at 1075. If "the debt collector" in subsection (b) refers to Universal, then nothing in the statute would prevent Jackson from continuing efforts to collect, even after a debtor submitted a validation request to the collection agency. Such a loophole runs counter to the plain text and "would render § 1692g almost a nullity." *Hernandez*, 829 F.3d at 1077; *see N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

One may argue that common law agency restrictions would mitigate this potential statutory enforcement gap. An agent, of course, owes a fiduciary duty to act within the scope of his principal's authority. *See Credit Gen. Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 775 (N.D. Ill. 1996). Congress, however, enacted the statutory rigors of the FDCPA because it determined that "[e]xisting laws and

procedures" were "inadequate to protect consumers" from the continued "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692. Indeed, the Senate Report on the FDCPA viewed the statute as "comprehensive legislation" which "fully addresse[d] the problem of collection abuses" and was "primarily self-enforcing." S. Rep. 95-382, at 5-6 (1977), 1977 U.S.C.C.A.N. 1695, 1699-700. The Court declines Defendants' invitation to rely on a common law enforcement regime that Congress has already deemed inadequate.

Furthermore, Defendants' interpretation of § 1692g would introduce needless confusion to the debt verification process. Under the plain language of § 1692g(b), a debtor's dispute or verification notice sent to an independent attorney agent would not suffice to halt collection activities by the collection agency client. Faced, however, with correspondence from a debt-collector attorney containing a notification provision referencing only the debt-collector client, it would not be *per se* unreasonable for a debtor to mistakenly believe that sending a validation request to the attorney sufficiently invoked the FDCPA's statutory protections. This is particularly true in this case, where Jackson's May 9, 2016 letter: (1) stated that he was "on retainer" to "advise [Universal] of corporate law" and assist "in the collection strategy of the outstanding accounts owed to them"; (2) stated that Jackson received and reviewed Universal's debt files and approved the release of the collection letters; and (3) contained only two addresses, with one address— Jackson's—located in the letterhead below the words "ATTORNEY ON RETAINER

FOR UNIVERSAL FIDELITY LP," and the other—Universal's P.O. Box—located within the payment slip.

Courts evaluate FDCPA communications through the eyes of the "unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *see also Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). While this assumes that the debtor possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences," *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000), it also assumes that he or she is "uninformed, naive, [and] trusting." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) (internal quotations omitted). Viewed through this lens, it would be unfair to require debtors to decipher the legal intricacies of a principal-agent relationship before qualifying for the FDCPA's safe harbor.

Finally, the Court's findings are consistent with the FDCPA's legislative intent. The Senate Report on the statute states that a "significant feature" of the legislation was its "provision requiring the validation of debts." S. Rep. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. Congress believed the validation provision would "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Id.* Because of this "broad remedial purpose," *Blakemore v. Pekay*, 895 F. Supp. 972, 984 (N.D. Ill. 1995), the statute "is liberally construed in favor of consumers." *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008); *Ross v. Commercial Fin. Servs., Inc.*, 31 F. Supp. 2d 1077, 1079 (N.D. Ill. 1999). This goal

is furthered by applying *all* of § 1692g's requirements to attorneys like Jackson and providing an additional avenue for debtors to obtain debt verification. Moreover, because "the current practice of most debt collectors is to send similar information to consumers, this provision will not result in additional expense or paperwork." S. Rep. 95-382, at 4. Indeed, Jackson could have easily satisfied his obligations by simply replacing references to Universal in his collection letter's notification provision with references to himself. Moreover, as an attorney agent, any validation requests returned to Jackson could be quickly answered through coordination with his collection agency client. To extent this is not the case, such costs are the reasonable price to be paid in exchange for the economic benefits conferred by debt collection.

In sum, the Court finds that, as a matter of law, attorneys may qualify as "debt collectors" under the FDCPA if they regularly engage in consumer-debt-collection activity. This is true even when an attorney serves as an agent on behalf of a debt collector client. Moreover, the notification provisions of § 1692g apply to the initial communication made in connection with the collection of a debt by *each* successive debt collector. Finally, an attorney debt collector making this notification must provide his *own* debt notice in addition to, or in lieu of, that of his client.

## IV.     Conclusion

Defendants' Motion to Dismiss [21] is denied.  The Court grants Plaintiff leave to amend her operative complaint for the limited purpose of incorporating Universal's March 22, 2016 notice to Plaintiff.  The status hearing previously set for December 7, 2016 stands.  At that time, the parties shall be prepared to discuss additional case management dates.

Date:  November 21, 2016

ENTERED:

John Robert Blakey
United States District Judge